Argument not to exceed 15 minutes per side. Mr. Noland for the appellant. When a school board opens its meetings for public comment, the First Amendment guarantees parents the right to stand at the podium and criticize their local officials without fear of intimidation or censorship. But for years, the Wilson County Board of Education has relied on a mix of written and unwritten rules to intimidate speakers and shield itself and school administrators from the harshest criticism. The board tells us in its brief before this court that these rules are perfectly fine and in fact help prevent anarchy at its meetings. But harsh and critical speech is not anarchy, and the board should be enjoined from further enforcing its unconstitutional rules. This case basically breaks down at least on appeal in two parts. There are the parts where we've challenged the rules that the board withdrew and the claims that we have against the public interest rule. I'm happy to take questions from the court, but I'd like to start with the mootness and irreparable harm issues that deal with the cases that the board withdrew. Do we analyze those differently? In other words, the abusive requirement was a policy or whatever, something that she read at the beginning of every board meeting. So would those be approached differently? I think they would be approached maybe slightly differently. And what I mean by that is that normally one of the issues that you think about with voluntary cessation is what process you had to use in order to get rid of the rule. And so if you had to vote, then that is typically a stronger factor than if you just have total discretion, one person. But I think that the evidence in our case shows that the board chair has discretion to enforce the rules that are written or not enforce the rules that are written. And so our position here is that... Explain that. I'm sorry. Could the board chair without an address requirement require the address be stated? The board chair without an abusive speech rule still told speakers that they weren't allowed to engage in abusive speech. And so I think that that shows that the board chair has discretion. And even when the address rule was still on the books before they had voted to take it off the books, the board chair stopped even reading that part of the script after we sued. Right, but that's different than affirmatively requiring it. I agree. Not enforcing a rule that's in place is one thing. I agree. But I think the address, the abusive speech rule is proof that they can affirmatively require rules that are nowhere written in any policy at all. The board chair announced that rule for... Let me ask you this, because to rely on the Cuomo case, you need kind of almost like discretion going back and forth. And I get the abusive one. What I don't understand is the address one, because you say it's only been used once in your brief. Am I wrong about that? Against? At least for the year that we looked at it. So it seems to me that's not something that you couldn't stop if they put it back in place. The plaintiffs... Yeah, in other words, there's no evidence the chair, I'm sorry to interrupt, there's no evidence the chair ever used the address requirement when it wasn't a rule. Is that fair? That's fair. Okay. It's always been a rule. That's right. And so I think your question is, if they voted to re-implement the rule tomorrow, it's a question one, whether or not the board routinely suspends its rules in a meeting to pass new policies. They could do it right there if they wanted to, and then you're out of luck because you don't have any way to go to court if you're in a meeting when that happens. And now you have to wait until maybe the next meeting, two weeks. Maybe we could go and get relief. Maybe we could get a preliminary injunction. We waited nine months to get a decision in our case on denying our preliminary... You could get a TRO. Possibly, except that the district court has said that there's no irreparable harm, and a TRO is based on the irreparable harm primarily. So that was what I was going to talk about. So I completely agree that defendants bear the burden of proof on mootness. And I think that means under the court's case law, if we looked at it through the likelihood of success factor, that sometimes we look at standing and mootness and likelihood of success, the burden would be on them to show that it's moot. But it seems to me that the burden is on you for irreparable harm. And we're only talking about a preliminary injunction. So it seems to me that you have to prove that it's likely, whatever... Maybe you could tell me what you think the standard is, but it's your burden to prove that the board will reinstate this, not indefinitely, because that might make it not moot. That can be decided on remand. But just during the course of the litigation. So as long as they won't reinstate it, when you are litigating this case, you can't show irreparable harm to get a PI. And I think you kind of conceded in your reply brief in response to their point of, well, yeah, well, they say, well, we haven't reinstated it for nine months, so that shows our good faith. And you kind of suggested, well, that's because we have this case right here. But your case, that logic means that we don't need a PI. Because as long as the case is going, they're not going to reinstate the rule under your own logic. So I think my first response is speech first. So the time between the defendants removing their rule and this court issuing it, the decision in speech first was 15 months. It's basically the same time frame that we have here. I don't think that we're conceding that point. I think that we have an active... We are seeking injunctive relief. It is currently pending. And so if we lose and that goes away, then we have to go and reinitiate something else. That's a different kind of thing than when we have our... You think that they would... I mean, the way you get outside of mootness is gamesmanship, and it would just be horrible gamesmanship for them. It's like, we're trying to moot this case by changing our policy, then we're going to change it back when the case goes away. But no, we're actually going to change it back when the case is still here. I think that argument... Well, you're either shifting the... If we're talking about mootness... So all I'm talking about is... So it's not even irreparable harm for purposes of a permanent injunction. All we're talking about... So you appealed a PI. And so a PI is only necessary during the scope of the case. And it just... For irreparable harm for a PI, you have to kind of show me that they are going to reinstitute the policy when this case is ongoing. And it's your burden, not... So on remand, they will have to prove it's moot. That's their burden. But what proof is there that they're going to reinstate it during the case? Let me answer this, I think, in two ways. The first is that when you think about irreparable harm under the First Amendment, the case law is very clear that the likelihood of success leads to presumed irreparable harm, which is why the dissent in Speech First said there's no reason to presume irreparable harm here because the university had withdrawn its policy. And this court said, no, you need to send it back and evaluate the likelihood of success first because that question will often overcome the other three factors. So if you flip the burden because it's irreparable harm in a First Amendment case, then what you're essentially saying is that voluntary cessation will never get you a preliminary... You'll always lose a preliminary injunction if there's voluntary cessation because it's your burden to prove gamesmanship, which is flipped. It's typically the defendant's burden to prove it. Sorry to interrupt you. Is there a distinction between the address requirement and the abusive or no on that? Or would they rise and fall together? I think they basically rise and fall together. I think that the issue of the voting maybe could be a factor that weighs slightly more for the address rule, but I think all the factors otherwise are just so... So on their irreparable harm, if they represent to the court, let's say they get up and say, we're not going to do this during the pendency of the litigation. At that point, there's no chance of harm, right? Because they're judicially estopped in theory. They've made a representation to the court upon which we can rely. I know they haven't gone that far, but I'm just curious as to your thoughts. I don't know if they can go that far. I would point to speech first where they had... Usually when this happens, you have some sort of declaration in the record from someone who could say that, the chair or something, I'm not going to enforce this. We don't have that here. In speech first, they did have that, and the court still said it was not enough because the person who made that representation did not have control over that decision. I think that our 28J that we filed Friday points out that the chair herself believes that these rules can be flipped at any time with the public statements that she made at her meeting on Thursday. I'm just struggling, though, with the backdrop to the argument that you're making. Here, what you must demonstrate is a likelihood of imminent and irreparable harm, both factors you have to meet. Our case law in Sumner County Schools' case is really clear that irreparable injury is an indispensable prerequisite to the granting of preliminary injunctive relief. I know you said, no, no, no, we can look at the other factor, so it doesn't matter. I think our case law and most preliminary injunction case law that I'm familiar with says, you got to show both, and it's your burden. I agree, Judge Strange. I didn't mean to misstate my position before or be unclear about it. In the First Amendment context, the likelihood of success on the merits gets you to presume the irreparable harm. My point is that you cannot evaluate a preliminary injunction and say, because there's voluntary cessation, there's no irreparable harm, without looking at the likelihood of success. That's exactly what Speech First said at the end of the opinion. The district court in Speech First had said that there was no threat of irreparable harm because the policy had changed. The dissent said that was a reason to affirm, and this court said, no, we're vacating the preliminary injunction because the court has to consider the likelihood of success on the merits in a First Amendment case, because that informs whether there's irreparable harm. So we don't think that we cannot prove irreparable harm. We think that because we are so likely to succeed on the merits, including in analyzing the mootness issue and the merits themselves, that that gives us the irreparable harm because it's a First Amendment matter. The presumption arises, I think, from the logic that a violation of a constitutional right is a per se irreparable harm. So once you show a violation of a constitutional right, you're done on the irreparable harm factor. But do you think there is something to the notion that, OK, once you find it likely that this event will exist, you meet that burden, but you still have to present some proof that they will, in fact, kind of squelch your speech or, you know, harm your speech rights? And that's what I'm struggling with. Once you get there, I get it. It's per se First Amendment, per se irreparable harm. But isn't there some onus to show that it's likely within the course of the litigation that a constitutional violation will occur? I see my time's up. If I could answer real quickly. Two responses. I think Speech First decided this, right? Exact same fact pattern. Speech First said, you go back, you have to analyze the likelihood of success. But I think that my other point is that all of those questions about, you know, whether it could happen, that's what the voluntary cessation doctrine exists to resolve, right? And so if you are deciding that there's no irreparable harm in a First Amendment case because of voluntary secession, then what you are saying is that whenever a defendant stops acting unlawfully after a motion for a P.I. has been filed, you lose basically automatically. Because as long as the defendant does nothing, says nothing, which is what happened here, then you're not going to be able to overcome that. You can't get irreparable harm and you no longer have a viable voluntary cessation doctrine in the P.I. context, which makes cases like Speech First and even Resurrection School just make no sense at all. Can I ask one? Yes. Just before you sit down, in the public interest, just a quick question, why shouldn't we use constitutional avoidance like the court did in Hansen to answer that question? I would point to the Maryville Baptist Church case, right? Same issue, you have an order that someone has signed, the defendants, you know, that was a mass gathering ban in Kentucky, the defendants wanted to have a drive-in church service, the governor, the plaintiffs, the governor said, my order doesn't ban drive-in church services. And this court said, well, that's not what the order says, we have to interpret what the order says. And I think, sure, you can do some interpretation, but I don't think that you can just, I think we also cite the Bevin and Associates cases, constitutional avoidance doesn't allow you to just write your own rule. And I don't know how you could interpret those words to mean what the district court said they do. So I take it you would concede, though, if the words actually said something to the effect of speech has to be on a topic of public interest, that that would be fine? I think that that is, that's certainly much closer. I do think that you're right that in and about, that difference is the key difference in terms of our viewpoint discrimination argument. I might have to think more about what public interest means, but I do agree that that's the issue. The reason I ask the question is, you know, in order for employment speech to be protected, so government public employee speech, one of the elements is that it has to be on a topic of public interest. Right, or public concern. Public concern. I view that as synonymous. If your viewpoint theory was correct, and that was problematic, that means the court itself had adopted a viewpoint discrimination test as one of its elements for proving protected speech, which strikes me as implausible. That sounds right. And like I said, I do think that the in is the key there. And of course, I would say that in the... Why don't, have you ever thought about just mediating this case? The reason I say that is if they interpret it that way, is there any chance of a resolution where we could have you guys get together and then... Like change it? Potentially amend the policy and everybody's happy? Like they could change it to relevant to the operations of the school. I mean, they could be specific. They changed that policy three times since we moved for a preliminary injunction and have not done so. So maybe they would change it. I don't know. I've been involved in litigation like this with city council meetings, other school boards, and I don't think I've ever seen the policies really change in the middle of litigation like that, but perhaps. Would you be willing to consider the possibility? We would always be willing to consider mediation if the court thought it would be a good idea. There may be some value in that too, because I notice in your argument that you say that the people you represent have been able to speak. They have gone to the board. They have expressed their opinion, and I struggled a little bit with the way you defined the burden on their speech is that they haven't said the worst things they could. Can you put some kind of practical hands on how there is that distinction in law? I get to go. I get to say I don't want these books in the library. I get to say I don't like your tests. I get to say all these things that I am concerned about, and yet your argument is, but your policy does not allow me to get into the most disparaging things I want to say. Correct me if I'm wrong, but I think that's the argument you made when you first stood up. I do think that, well, one of my clients spoke one time the time that she was stopped from speaking further. Another one of my clients has spoken sometimes, and they've both talked about self-censoring. Yes, it's their belief that because they only have one opportunity to stand at a school board meeting and talk about a topic once per month, twice per month, the topics might change at the next meeting. They want to speak very harshly about some of the policies and the officials who are responsible for enacting these policies. They self-censor because if you are cut off from the podium and you don't get to finish delivering your remarks, then you're done. Your argument is my clients get to go before the board routinely. They are allowed to speak. They have spoken about library books. They have spoken about materials available to children about how children have interacting problems, but you think that in the future there may be something worse that they want to speak to. That, to me, is just ... How do you ever pin down that right? If every time you go, you get to speak, but you are chilled in not getting to speak to the stuff that you think might happen in the future. What's the test we apply to something like that? The test is that the rule against abusive speech is unconstitutional viewpoint discrimination precisely because it prevents people from saying things that might be too disparaging. As this court said in Eisen, that word means harsh and insulting. A reasonable person that would hear a rule that says you can't use abusive speech and they think, I want to say harsh. Maybe things that would be interpreted as insulting. One of our declarations, I think by Ms. Lemons, talks about how she doesn't even understand what that means and that makes her nervous. Not nervous enough not to be able to speak before them about the issues she has already presented to. Ms. Lemons is the one who stood up and was cut off, so she was not actually ... Not on abusive speech, but on her address. Correct. Her declaration, which has not been contradicted in any way in this case, says that when she was writing her remarks to speak on that day, she thought very carefully about what she was saying and she tailored and self-censored her remarks so as to not cross the line that whatever the board chair would think is abusive. If a rule is unconstitutional, which we know that rule is under ISIN because it prevents someone from being harsh and insulting, then we know that there is speech that's permissible under the Constitution that is harsh and insulting. My client's declarations have said that they would like to speak more harshly about the board and that they are worried about being cut off because of this rule. The rule is that you have an unconstitutional rule. It bans harsh speech. My clients want to speak more harshly than they have been, and they have refrained from doing so. That's self-censoring. That's a classic chilled speech situation. You'll have your room. Thank you. May it please the court and good afternoon, your honors. It's my honor to be here today. My name is Chris Hayden. I'm a member of the Jackson-Madison County Bar in Tennessee. Today I'm here on behalf of the defendants of police in this matter. I'm excited to say that we're here today on a First Amendment case. Everybody loves a good First Amendment case. I can tell it by the court's questions already. The court is interested in this topic as well. It's something that I think binds all lawyers together. Before, let me address an issue that the court brought up. The court brought up the idea of mediation. On behalf of the school district, I would represent that the school district has no problem with that. The school district, the Board of Education, the Board of Members, myself before this lawsuit was filed, never read in the public interest as being anything else than a relevancy requirement. That's all it's ever been. Why didn't you change it then? You changed other things after this was filed. Why didn't you change it to relevant to the operations of the school or something similar? You could make it pretty easy and you left in the public interest as I understand it. Is that correct? That's a good question, Your Honor. The answer is this. In Tennessee, boards of education are comprised of popularly elected board members. They have two purposes. They adopt and pass policies through which the entire governance of the school system flows, administration, and they pass a budget. That's what the Board of Education does. Then they hire a superintendent that oversees the day-to-day operation of the school system. The policy, again, being one of the two things that the Board of Education does, is incredibly important and goes into every aspect of the school system. I represented the court in representing school systems across Tennessee that policies are always being changed. But they got rid of abusive, they got rid of the address requirement. You still haven't answered my question. Why didn't they change this one if everyone agrees it was relevant to the operation of the school? Your Honor, as the court pointed out, the school changed two of the... Just answer my question. Why didn't they change it? Because number one, we believed it was constitutionally defensible because we believe the case law is very clear that it means a relevancy requirement. Then number two, if they had done... It doesn't seem clear to me because it seems like I can come up with all sorts of things in the public interest. The war in Israel is in the public interest. Illegal immigration is in the public interest. I can also argue that illegal immigration could impact the public schools. The war in Israel could impact the public schools because you could have debates on campus. In the public interest is so broad that I can stick almost anything in it. Yes, Your Honor, I see your point. As the court pointed out, obviously the public comment portion of a school board meeting is a limited public forum. That's how we're allowed to have reasonable content restrictions to keep it relevant to the purpose of the forum. You can have reasonable content restrictions to relevance, but you can't just have a vague phrase and then pick and choose what you want to hear. That seems to be what you're doing because is it true that the address requirement was only enforced this one time? Because you didn't dispute that that I saw in your brief. Your Honor, I'll address... There were several different questions and I'll try to address each of them in turn. Well, answer the last one first. Okay, so that was the address requirement. Was the address requirement only enforced one time? Is there any evidence in the record it was enforced any other time against any other person? Your Honor, to my knowledge, it was not. And I would encourage the court to look at that as the plaintiff's appellant's quote at the entire exchange that it be viewed in context as some of the cases cited talk about. And that when viewed in context, what the board chairperson said was that upon recommendation, again which is in the record, of the board attorney, that the plaintiff stood up and wished to speak about an ongoing child abuse investigation and the attorney recommended essentially that she not be allowed to do so because it implicated another student who had separate privacy concerns. No, I get that. I saw that. But why not just say you can't speak about that? Why then require the address be publicly disclosed? Right, as far as the board chairperson's comment or the policy? No, the request at that point. That you haven't disclosed your address to sit down or whatever it was. I can't remember the specifics. Your Honor, what the board chairperson said was that there's more than one referring to the other student whose privacy concerns being implicated. And then she did make the comment. And also, you have violated the public address requirement. You didn't say your address. Which at the time, that rule was on the books. The court's correct. And so, but we would... But never enforced? As far as I know, I don't know of any other time. You're right, Your Honor. But still, as the court got to irreparable harm and, of course, our position of mootness, this rule was stricken from the books as well as the, which we would deal with the abusive and disruptive comment, that kind of altogether... You agree under ICE and that's a violation of the First Amendment, your abusive policy. I would agree it's very constitutionally questionable. And that would be why the board has rescinded it and has no longer enforced it. And then in the board's briefing, and then I can represent to the court today, will not be reinstated. There's no gamesmanship here, as the court notes, and as I would submit. There's not... Board operations and board meetings are just fine without those two rules. They proceed it for a year and a half without them. And so there's no reason for them. And so if you have a rule that I think we would all agree is at the very least constitutionally suspect, why would you keep it? To me, that's not gamesmanship. That's just being a good representative of your constituents, which again, the constituents here never complained about any of these rules. As soon as the exchange happened, almost immediately, there was a lawsuit filed and then a preliminary injunction request filed like a week and a half later. And so the board didn't have an opportunity to respond to it because the board is either a legislative or quasi-legislative body in having to draft, vote on these policies, revise them. And so they did so at their next board meeting after this action was filed and preliminary injunction was filed. They addressed it as soon as they could. And that would be our position, your honor. Can I ask you, so the way this is written, it's not written as Judge Lepar suggested. It's not relevant to school proceedings. It's got an unclear antecedent. Do you have the policy in front of you by chance? You may not, so I'll just read it. The chairman or individual board member may recognize individuals not on the agenda for remarks to the board if he or she determines that such is in the public interest. It's not clear to me what such is. It's a pronoun that could refer back to remarks or could refer back to the recognition and such is in the public interest. I do see how that can be read to be viewpoint-based. I could give you the hypothetical racial equality is in the public interest. So if somebody wants to get up and talk about how we need to promote racial understanding, we'll let you speak. But we're not going to let a Nazi get up and speak or somebody who wants to engage in racially discriminatory speech because we don't view that as in the public interest. Why wouldn't you read it that way? And that would clearly be viewpoint-based. So, your honor, and again, I'll be the first to agree with this court that this policy could be better drafted. If it is a relevancy requirement, which again, this is a facial challenge, so we're grasping at hypotheticals here. But I'll be the first to agree that if it is a relevancy requirement, it could be more clearly drafted. And again, going back to my first point regarding mediation or redrafting, I think the board would have no problem at all redrafting or revising and voting on going through the legislative process and making this more clear because, again... Do you want it to even be, even if it is a topic of public concern, as Judge Lepar also said, the war in Israel is a topic in public concern, but it might not have much to do with the school proceedings and this board. So I assume it should be even, so you read it even narrower to just be public interest with respect to the school proceedings? Yes, your honor, and here's why. So, as we all know and we all agree, there's nobody here that disputes that, again, the public comment portion of a school board meeting is a limited public forum in which we can have relevancy requirements that are reasonable in light of the topic or in reasonable light of the forum. And as the court also knows from our briefing, at all times there have been at least two methods of speaking and getting permission and being allowed to speak at a board meeting. Number one, you can sign up ahead of time and address a topic on the board's agenda for that night, subject to the Tennessee public... Actually three in all, then, because you can ask to get something on the agenda, you can ask to address something on the agenda, and you can show up and ask for a board member to let you speak. Yes, your honor, and that gets to my exact point, is that in the board policy, when we're talking about in the public interest, what that's attached to, it's never attached to either of the methods of addressing topics on the board agenda, because obviously then it's going to be relevant, or it wouldn't have gotten on the board agenda and put there. This only attaches to individuals that wish to speak about a topic not on the public agenda or on the board agenda. So, would you really allow anybody to put anything on the agenda? If you wanted to talk about the weather in Florida, all you have to do, you can't do it sua sponte, but as long as you put up, my vacation home in Florida. Well, yeah, we'll talk about that. Yeah. It doesn't seem plausible to me. It doesn't seem plausible, you're right, and it's not relevant to the purpose. Yeah, I agree. So it does. No, the way in which the school boards work is they will have... So what are the standards by which you get something on the agenda? Yeah, so there's a policy, or there's an agenda subcommittee, basically, that is comprised of members of the Board of Education, oftentimes members of the general public, and then members, or the superintendent, director of schools, and then they'll take, whenever somebody submits something that won't be put on the agenda, they'll then have a vote on that. But then, obviously, again, if you submit something that's not put on the agenda, you have that method of attempting to address the board and asking to be recognized, right? And then, furthermore, we would suggest that, as was spoken about in the Lowry v. Jefferson Board of Education case, in Tennessee, again, these are all publicly elected officials, and by state law, their phone number and their email address is accessible to the public. And, in this case, it's published on the Wilson County Board of Education website. And, furthermore, they don't have to, but many of the board members, including Ms. Farrow, the board chairperson, operates a public Facebook page in which she'll post items about the school and members of the public comment. She doesn't moderate that, and, in fact, I would submit that if the court goes and views this publicly accessible Facebook site, the plaintiffs rarely comment and participate on this Facebook site. They're not moderated, they're not censored, nothing like that. So even outside of school board meetings, there are numerous ways in which citizens can speak with their elected officials regarding school board matters. One other question I have for you that's related to that sentence. I think it's a distinct concern. It's the verb may in the sentence. So the chairman or individual board member may recognize individuals. I think this is the point that your friends on the other side are getting at about prior restraint concerns, and those concerns are usually about discretion in the permit provider. I know this isn't the permit context, but that's what the concerns are. And even if it read the chairman or individual board member may recognize individuals to speak on a topic relevant to board proceedings, I might independently find the grant of discretion concerning, because that allows for case-by-case decision making. I wonder if you could respond a little bit about why we shouldn't view the fact that, aside from the unclear nature of public interest, that even if an individual finds that it is in the public interest, that they have this residual discretion to allow or not allow the speaker to speak. That's a good question, Your Honor. So first I would point the court to Lowry v. Jefferson County School System, which we believe addressed this prior restraint and found that it was not. But specifically to the court's point, number one, again, the school system, this is a facial challenge which, as the court knows, are disfavored. The school is certainly open to revising this policy to address any and all concerns, which has never been used, by the way. I would say that, again, the board members have that discretion under the line of cases to decide on relevancy. I recognize there has to be a decision maker on whether something is relevant, but you could have a policy, subject to time limits, of course, but you could have a policy that just says if it's relevant, you can speak. If it's not relevant, you cannot speak. The problem I have here, distinct from the unclarity of public interest, is here it seems to suggest that even if it is relevant, there is residual discretion in the chairman to say, well, I'm not going to let you speak anyway. The reason this is concerning goes back to what we saw happen, play out. Nobody is enforcing the address requirement and then it's suddenly enforced. That discretion is concerning because it's usually a subtle kind of pretext for what is really going on, which is discrimination on the basis of evil. My time is up. If I may respond to the court. With the court's proposed change in policy language, I think you said, if something is relevant, you can talk about it. If it's not, you can't. Someone has to decide what's relevant. I would agree with that. There's always going to be somebody deciding whether, in a limited public forum, this topic of speech is relevant or not, if we go through this method that's not speaking about things on the agenda, which, of course, again, has never been done before. We're all talking hypotheticals. You're representing, on behalf of your client, that you will not reinstate the two address and abusive language, but that you are willing to mediate and discuss the third way that someone can address an issue before the board. Is that your position? That's correct, Your Honor. It is a difficult task. Some of the rules are concerning in language. I think the importance that you referenced in your briefs matters a good deal because what I'm seeing is a tiered system of ability to get to speak before the board, and it is intentionally and likely under the case law correctly so. You begin with someone. You have to make a particular application if someone wants to put something on the agenda that is not on the agenda, and then they can be authorized by the committee to address for a certain number of minutes. Then you have an opportunity for people who want to speak to what the board has placed on the agenda, and there is a different time frame for that and a different time frame to speak. My understanding of this last one is that it is a timing issue for people who have not in adequate time petitioned the board to appear, but who want to appear before the board. So what you're doing in that third rule is trying to open another option to the public, correct? And I think that one of the keys to the things that we are talking about here is the ability to fix that language in a way that doesn't provide for abusive discretion, but in a way that does not deny the latecomer, who is not aware of the rules of the board and desires to speak, an opportunity and an avenue to exercise their speech to tell the board things that matter to them. Yes, and if I may respond, Your Honor. Please, please. So to your first point, number one and two, the abusive and disruptive language and address announcement, that's correct. I'm representing to you as an officer of the court. Those rules are gone. They're not coming back. And I would be a bad lawyer if they did, if I represented. They should, right? And so those are the first two. The third, you're absolutely correct, Your Honor, the methods of addressing the board are crafted with, again, it being a public meeting, publicly elected officials, and a public school system to maximize the ability of constituents to address the board. And so you're right, that third way that's at issue here today is to make sure that even if you miss that deadline to get on the agenda, you still have an opportunity to speak. And am I correct that the ones that come in under that third category generally come in right before the meeting? That would be correct, Your Honor, because otherwise they would have asked to be on the agenda if they'd gotten, because under the Public Records Act, or in the Public Meetings Act, we have to publish the agenda in advance, as the court knows. So that's correct. That would be an issue that the constituent believes is important, wants to be brought up, but didn't get on there in time. This provides them an avenue, potentially, to do that. But again, that's the object of the board, is to invite constituent participation. So if the court has concerns, and obviously the plaintiffs have concerns about the wording of that rule, the board is more than open to changing that, to make sure everybody understands it's irrelevant to your requirement and nothing more. And frankly, Your Honor, a lot of these board policies are for the general public to understand the operation of the board, because under case law, it's my understanding that the board doesn't have to have that in policy. The board has the right, under limited public forum doctrine, to make sure that topics discussed are relevant. So that doesn't even have to be there, but it's my understanding. It's our discussion in the case law of avoiding chaotic meetings, but allowing people, the key, the opportunity to speak what they want to speak to the board. Correct, Your Honor. Okay. Thank you, Your Honor. Thank you. Rebuttal. Just a few quick things, Your Honors. Judge Murphy, your question about the may, I think I'd compare it to the may issue and shall issue, sort of, permit requirements under the Second Amendment. I think it is problematic, but we haven't specifically challenged that here. The alternative ways to speak in front of the board, I think I understood my friend on the other side to say that there really is no standard for who decides who gets on the agenda, and so if there's no standard for how you get on the agenda. I'm sorry. I didn't hear that. My understanding is that there are two ways that the entire board committee allows people to get on the agenda to speak, right? One, they can get their own issue on the agenda with permission, and two, they can sign up to speak to the board on items that are already on the agenda. Yes, Judge Tranchin. This is the third one that is the timing issue that comes up later because you have not met the timing requirement of the two earlier ones. Yes, Judge Tranchin. What I meant is that those first two to get onto the agenda, you still have to get permission. And there's relevancy requirements that govern the boards and the committee's activities. I don't know what the requirement is that binds the board to decide what goes on their agenda. But the second point is that the alternative sort of means of communication matters. It doesn't matter when you have a content-based restriction. That's when you're looking at content-neutral restrictions and you think about other ways that you could engage in the same speech. On the representation about what the board will or will not do, I'm not exactly sure what the import of that is. If you have cases where declarations in the record are not enough to get you there, I don't know what prevents the board from voting to do what the board wants to do. A representation in this court maybe is a signal that they won't do that. But my understanding under state law in Tennessee is that the board would have to vote to commit to any action like that or not. And I'm not aware of any vote that the board has taken to vote to bind itself from not acting in the future. There are two different board members in this case from when this case started. The board members change. I don't know how you make that representation go forward. I didn't get to ask you. On the public interest provision, I recognize the specific facts of the two moms were more about the advertising or the address and the abusive language provisions. So why do we think that the public interest is going to cause irreparable harm here since there's not a lot of facts about this ever being applied to them? It's been applied to them in the way that it's applied in cases like Forsyth County where you might apply for permission to speak or hold a rally and the facts might, you might be granted permission. Forsyth County, I think they were granted permission and it was even constitutional but because you've vested that discretion in the official account. But don't you, yeah, so I think your point is if a permitting process, which we can assume kind of this is an analogy to just the mere fact that you have to go through the process and this is the problem, all you have to do is suggest that you would go through it. But what are the, I mean, that means there has to be some amount of pleadings that we want to kind of just show up and not get our stuff on the agenda and then just sua sponte talk. Is there any evidence of that? So you see my point that. I don't know if I followed that question. So there's the other two routes in which you can speak, which is to try to get your topic on the agenda or to say you want to talk about something on the agenda. And then this is only what we're talking about is, I call it spontaneous or sua sponte, you know, right at the board meeting speech. So you're really only in the third bucket. Your clients could do the first two. And there's not a lot of evidence that they have traditionally just shown up and wanted to speak and have not been allowed to. So that's kind of the point I'm getting at, that where is the evidence that the public interest provision has ever, they've actually shown up without trying to get stuff on the agenda and they have not, they have been barred from speaking. And where is the evidence, that's past. Where is the evidence that they want to continue to do this? That's why I call it sua sponte, but it's kind of spontaneous, I suppose. I understand your question. No, I agree. There's not evidence that they've been denied, right? And so we would rest on the line of cases from Forsyth County about the ability to pursue the relief that we want here. Okay, so I'll look at those cases. Does anyone have more questions? Thank you. We thank you both for your briefs and your arguments. They're helpful to us to understand all the issues in this case. It will be taken under advisement and an opinion issued in due course.